**Joan PLEUNE, Vernice Akpan, Elva Jiminez, and 467 Pacific Street Tenants' Association, Plaintiffs,**

v.

**Samuel R. PIERCE, Jr., individually and in his capacity as Secretary of the United States Department of Housing and Urban Development; Joseph D. Monticciolo, individually and in his capacity as Regional Administrator of Region II of the United States Department of Housing and Urban Development; Edward I. Koch, individually and in his capacity as Mayor of the City of New York; Roger Altman, individually and in his capacity as the Chairman of the New York City Public Development Corporation; Paul A. Crotty, individually and in his capacity as the Commissioner of the New York City Department of Housing Preservation and Development; and Rose Associates, Defendants.**

**No. 87 CV 2736.**

United States District Court,
E.D. New York.

May 22, 1991.

John C. Gray, Jr., Brooklyn Legal Services Corp. B (Jane Greengold Stevens, Raun J. Rasmussen, Russell Engler, of counsel), Brooklyn, N.Y., for plaintiffs.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Paul Weinstein, Howard M. Schmeltzer, Richard Price, of counsel), Brooklyn, N.Y., for federal defendants.

Victor A. Kovner, Corp. Counsel of the City of New York (Susan M. Shapiro, Renee Hill, of counsel), New York City, for mun. defendants.

Kaye, Scholer, Fierman, Hays & Handler (Richard Seltzer, Suzanne Jaffe, of counsel), New York City, for defendant Rose Associates.

MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs bring this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, *et seq.*, contending that in approving the Atlantic Terminal Project (Project), a mixed-use development project in Brooklyn, defendants failed adequately to consider the Project's impact on low and moderate income residents in violation of the Housing and Community Development Act (Development Act), 42 U.S.C. § 5301 *et seq.*, and the Project's impact on the racial composition of the surrounding neighborhoods in violation of Title VIII of the Civil Rights Act (Title VIII), 42 U.S.C. § 3601 *et seq.* Plaintiffs seek an injunction nullifying the Housing and Urban Development's (HUD) final approval of the project, and all parties move for summary judgment.

## I.

The essential facts are not in dispute. On November 30, 1985, the City of New York (City) submitted an application to HUD for an Urban Development Action Grant (Development Grant) in the amount of $16.43 million to assist in the development of the Project. On September 16, 1986, the City completed that application and on September 30, HUD gave preliminary approval for a grant in the amount of $10.73 million. On June 16, 1988, HUD and the City executed a final grant agreement for that amount.

On December 19, 1986, the federal defendants provided plaintiffs with a 419 page administrative record, stating by letter dated January 12, 1987 that it constituted "all documents on which [HUD's] decision to approve" the grant was based. That record contains the November, 1985 Development Grant application and various HUD summaries, letters, and reports regarding the application.

Not included in the record was a Draft Environmental Impact Statement (Impact Statement) prepared by the City analyzing the Project. The federal defendants contend that HUD received the Impact State-ment in June, 1986 and considered it before giving the Project final approval. The federal defendants do not dispute that the regional HUD office, which completed its review of the Project in December, 1985, did not consider the Impact Statement before sending its approval to the Washington HUD office.

## II.

■ The Administrative Procedure Act requires the reviewing court to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Although an agency decision "is entitled to a presumption of regularity," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), the reviewing court must engage in a "thorough, probing, in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* 91 S.Ct. at 823–24.

■ The court must also establish whether the agency followed all relevant regulations, which when validly promulgated have the force of law. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). As the Supreme Court explained in *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957), although "the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so, ... and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them." Actions taken in violation of agency regulations are therefore "not in accordance with law." *Frisby v. United States Dep't of Hous. and Urban Dev.*, 755 F.2d 1052, 1055–56 (3d Cir.1985) (quoting *Bradley v. Weinberger*, 483 F.2d 410, 414 n. 2 (1st Cir.1973)). But the court must

defer to an agency's interpretation of its own regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

The Development Act lists as a "primary objective" the provision of "decent housing" and the expansion of economic opportunities "principally for persons of low and moderate income." 42 U.S.C. § 5301(c). The Act requires applicants for Development Grants to include as part of the application "a certification satisfactory to the Secretary" of HUD that the applicant "has analyzed the impact" of the proposed project on the area residents, "particularly those of low and moderate income." 42 U.S.C. § 5318(c)(3). Defendants contend that this provision delegates full responsibility to the applicant, whereas plaintiffs contend that the Secretary must at least review the applicant's analysis and findings.

Before 1981, the Development Act required Development Grant applicants to submit "a statement analyzing the impact" of the Grant on residents of low and moderate income. Housing and Community Development Amendments of 1978, Pub.L. No. 95–557, § 103(g)(6), 92 Stat. 2080, 2084 (1978). The statute required the Secretary to weigh the "impact" of the proposed Grant on those residents. *Id.* at § 103(h).

The statute was amended in 1981 to essentially its current form, permitting the applicant to submit a "certification satisfactory to the Secretary" and requiring no independent determination by HUD. 42 U.S.C. § 5318(c)(3).

The legislative history indicates that the primary purpose of the change was to shift the responsibility for analyzing the impact on low and moderate income residents from HUD to the applicant. The Senate Report accompanying the Act amending the statute explained that the change "relieves applicants of the burden of preparing additional paperwork for HUD's review." S.Rep. No. 97–139, 97th Cong., 1st Sess.

247, *reprinted in* 1981 U.S.Code Cong. & Admin.News 396, 543. The Report stated further that HUD could continue to insure compliance with the Development Act's purposes through "citizen complaints or HUD audits and reviews," *id.*, indicating that Congress did not intend HUD to seek to insure compliance through the application process.

The Development Act as amended provides no standards that the Secretary must follow to determine when a certification is satisfactory. The regulations promulgated by the Secretary state that the application must contain a certification stating that the applicant has conducted the impact analysis, 24 C.F.R. § 570.458(c)(14)(i) (1990), and a "statement analyzing the impact" of the proposed Development Grant on low and moderate income residents. *Id.* at § 570.458(c)(6). Although the regulations indicate that an application is not complete without these materials, they do not state at what point in the application process the applicant must submit the certification and statement.

■ The Development Grant application for the Project contained the required certification, but not the analysis required by the regulations. Defendants contend that the Impact Statement provided to HUD during the application process satisfied the statement requirement in the regulations.

There can be little doubt that it would be sound policy to require the certification and statement at the very beginning of the process. It would insure that the applicant conducted the required analysis before either the applicant or HUD became irreversibly committed to the Project, allow HUD to review the applicant's findings at each stage of the approval process, and permit for an orderly review of the process by the courts if the Secretary's final decision is challenged.

But the court finds that HUD's interpretation of the regulation permitting the City to submit the statement later in the application process and in the form of the Impact Statement is not "plainly erroneous."

■ Plaintiffs also contend that the City and private defendants violated the Development Act by failing to perform the required analysis, while those defendants state that plaintiffs are barred by the doctrine of claim preclusion from litigating that claim.

*Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978), holds that a final judgment in an action bars the subsequent litigation of claims between the same parties arising out of the same transaction. *Id.* 407 N.Y.S.2d at 648, 379 N.E.2d at 175–76. Plaintiffs brought an action under state law against the City and private defendants challenging approval of the Project in which the New York Supreme Court, affirmed by the First Department and Court of Appeals, granted summary judgment on behalf of defendants. *Akpan v. Koch*, 75 N.Y.2d 561, 555 N.Y.S.2d 16, 554 N.E.2d 53 (1990). The parties and transaction in the earlier case were the same as here, as well as the legal standards applied by the courts. *Id.* Plaintiffs are therefore barred from relitigating the issue here.

### III.

■ Plaintiffs further claim that the federal defendants acted arbitrarily and capriciously by failing to consider the impact of the Project on the racial composition of the surrounding neighborhoods. Plaintiffs say that the racial impact is a "relevant factor[ ]," *Overton Park*, 91 S.Ct. at 824, that must be considered by HUD under Title VIII.

Title VIII states that "[i]t is the policy of the United States to provide ... for fair housing throughout the United States." 42 U.S.C. § 3601. Furthermore, the statute requires the Secretary of HUD to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter." 42 U.S.C. § 3608(e)(5).

The Court of Appeals for the Second Circuit has interpreted this language as requiring, at a minimum, that the Secretary give "consideration ... to the impact of proposed public housing programs on the racial concentration in the area in which the proposed housing is to be built." *Otero v. New York City Hous. Auth.*, 484 F.2d 1122, 1134 (2d Cir.1973).

The federal defendants contend that the 1981 change in the Development Act effectively amended Title VIII by shifting HUD's obligation to consider a project's impact on the racial composition of the surrounding neighborhoods to the applicant from itself to the applicant.

The Development Act concerns itself solely with the effect on the economic composition of surrounding neighborhoods and says nothing about the impact on their racial composition. While it is true that these separate concerns will often overlap, the court will not infer that Congress meant to address both when it spoke only of one. Moreover, nothing in the language of the 1981 amendments to the Development Act nor in the legislative history accompanying those changes supports the contention that Congress sought to modify HUD's duties under Title VIII.

The administrative record contains no information about the impact of the Project on the racial composition of the surrounding neighborhoods. The Impact Statement contains some data on the recent trends in the racial composition of surrounding area, and a conclusory statement concerning the impact of the Project, but no analysis or discussion that would allow HUD independently to fulfill its obligation under Title VIII. The court therefore concludes that HUD acted arbitrarily and capriciously by failing to consider a relevant factor under Title VIII when it approved the Project.

The court grants summary judgment on behalf of the federal defendants with respect to the Development Act claim and on behalf of plaintiffs with respect to the Title VIII claim, and nullifies HUD's final approval of the Project. The court further grants summary judgment on behalf of the

**48**

City and private defendants with respect to all claims asserted against them.

So ordered.